## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CYRIL M. LOGAR,
R. STEPHEN SEARS,

       Plaintiffs,

      v.

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS, including members from
2010 through the present, a West Virginia state
board; NIGEL CLARK, individually and as
Special Academic Integrity Officer of West
Virginia University; MARJORIE A.
MCDIARMID, individually and as the Steptoe
and Johnson Professor of Law and Technology
and Academic Integrity Officer for West
Virginia University; E. JANE MARTIN,
Ph.D., individually and as former Provost of
West Virginia University; JAMES P.
CLEMENTS, current President of West
Virginia University; and MICHELE G.
WHEATLY, current Provost of West Virginia
University,

       Defendants.

Civil Action No. 1:13-cv-145 (Keeley)

Electronically Filed May 14, 2013

**JURY TRIAL DEMANDED**

## COMPLAINT

AND NOW COME the Plaintiffs, Cyril M. Logar ("Dr. Logar") and R. Stephen Sears ("Dr. Sears") (together, "Plaintiffs"), by and through their counsel, Robert J. Ridge, Esq. (Logar), and John H. Tinney, Esq. and Thomas A. Clare, P.C. (Sears), and for their Complaint against the Defendants do hereby aver and allege as follows:

### INTRODUCTION

1.    This is a case about Defendants' refusal to restore Plaintiffs' reputations as required by West Virginia University's ("WVU" or "the University") own academic integrity

policy (the "AIC Policy")[1] and Plaintiffs' employment contracts with the University, even after it concluded an academic integrity investigation with no finding of misconduct. The inquiry dragged on for years, far exceeding the 210-day period provided in Plaintiffs' employment contracts with the University and the AIC Policy. *See* AIC Policy at 6. The investigation—and the negative publicity resulting from WVU's multiple media leaks—destroyed Plaintiffs' professional reputations, but concluded with a finding that they had done nothing wrong. And now, after the investigation has concluded, the University and its Board of Governors refuse to restore the harm done to Plaintiffs' reputations, as required by their employment contracts and the AIC Policy. The University and the Board of Governors have disregarded their obligations to Plaintiffs under their employment contracts and the AIC Policy and deprived Plaintiffs of the process afforded them in those contracts.

## PARTIES

2.     Plaintiff Cyril M. Logar is an individual residing at 175 Lone Pine Drive, Masontown, West Virginia 26542. At all times material to the claims asserted in this Complaint, Dr. Logar was and continues to be a tenured faculty member at WVU. Dr. Logar also formerly was the Associate Dean of the College of Business and Economics at WVU, a position that he no longer holds. At all times material to the claims asserted in this Complaint, Dr. Logar discharged the obligations of his employment fully and in good faith.

3.     Plaintiff R. Stephen Sears is an individual residing at 220 Lake Powell Drive, Laredo, TX 78041. At all times material to the claims asserted in this Complaint, Dr. Sears was a tenured faculty member and the Dean of the College of Business and Economics at WVU. Dr.

---

[1]     Policy and Procedures for Responding to Allegations of Academic Misconduct at West Virginia University, Current AIC Policy 2000, *available at*, http://www.wvu.edu/~lawfac/mmcdiarmid/aic/Academic%20Misconduct%20Policy%20WVU.pdf (Ex. 1).

Sears no longer holds any positions at the University. At all times material to the claims asserted in this Complaint, Dr. Sears discharged the obligations of his employment fully and in good faith.

4.     Defendant West Virginia University Board of Governors ("Board of Governors" or "BOG"), is the institutional governing board appointed by the Governor of the State of West Virginia, as authorized by W. Va. Code § 18B-2A-1. The powers and duties of the BOG include "the management of all personnel matters, including, but not limited to, employment, classification, compensation, and discipline for employees of West Virginia University[.]" Board of Governors Powers & Duties, *available at*, http://bog.wvu.edu/powers.

5.     At certain times material to the allegations set forth in this Complaint, Defendant Nigel Clark ("Clark") was the Special Academic Integrity Officer of WVU and was employed by the University. Upon information and belief, Clark became the Special Academic Integrity Officer in November of 2011. Clark also serves as the Associate Vice President for Academic Strategic Planning.

6.     Defendant Marjorie A. McDiarmid ("McDiarmid") is the Steptoe and Johnson Professor of Law and Technology and is serving as the Academic Integrity Officer for WVU. McDiarmid is an employee of West Virginia University. McDiarmid is a lawyer who is licensed in the State of West Virginia by the West Virginia State Bar, and, upon information and belief, her license is currently active.

7.     Defendant E. Jane Martin ("Martin") is the former Provost of West Virginia University. Upon information and belief, her current address is 222 Zimmer Lane, Waynesburg, PA 15370.

8.     Defendant James P. Clements ("Clements") is the current President of the University.  At times material to events in this Complaint, Clements supervised, among others, the Special Academic Integrity Officer and other administrators and faculty of the University. Upon information and belief, his current business address is 103 Stewart Hall, P.O. Box 6201, Morgantown, WV 26506-6201.

9.     Defendant Michele G. Wheatly ("Wheatly") is the current Provost of WVU.  At times material to events in this Complaint, Wheatly was responsible for the administration of WVU academic policies including the AIC Policy.  Upon information and belief, Defendant Wheatly also supervises Defendant Clark in his role as Associate Vice President for Academic Strategic Planning.  Upon information and belief, her current business address is Stewart Hall, P.O. Box 6203, Morgantown, WV 26506-6203.

10.    Defendants are agents of the University, bound to follow its policies, including the AIC Policy.

11.    Defendants are "persons" as the term is used in 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

13.    This Court has supplemental jurisdiction to hear any additional state law claims asserted in this Complaint pursuant to 28 U.S.C. § 1367 because each of Plaintiffs' claims arises from the same common nucleus of operative facts.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims asserted in this Complaint occurred in Morgantown, West Virginia.

## FACTUAL ALLEGATIONS

### The University's Academic Integrity Policy

15.     The positions of all tenured faculty members and deans at WVU are governed by the University's official Policy and Procedures for Responding to Allegations of Academic Misconduct—the AIC Policy.

16.     In 2005, Dr. Sears accepted positions with WVU as the Puskar Dean of the College of Business and Economics and as a tenured professor and faculty member.

17.     Dr. Logar was hired by WVU in 1976.  In 1982, Dr. Logar was granted tenure and promoted as a member of the faculty at WVU.   In 2004, Dr. Logar became Associate Dean of the College of Business and Economics at WVU.

18.     Plaintiffs' employment at WVU was governed by and subject to the policies and procedures adopted by the University, including the AIC Policy.

19.     Dr. Sears, as Dean of the College of Business and Economics and as a tenured faculty member of the University, was bound to follow the AIC Policy.

20.     Dr. Logar, as Associate Dean of the College of Business and Economics and as a tenured faculty member of the University, was bound to follow the AIC Policy.

21.     Defendants, as agents of WVU, were bound to follow the AIC Policy.

22.     Defendants' conduct shows that the University and its Board of Governors believe—and have believed, at all times relevant to this matter—that it is bound by the AIC Policy.

23.     The AIC Policy provides governing principles for inquiries into allegations of academic misconduct, including several provisions respecting treatment of the persons being investigated.

24.    The AIC Policy requires that academic integrity inquiries proceed fairly and confidentially:

> Inquiries and investigations will be conducted in a manner that will **ensure fair treatment of the respondent, and confidentiality** to the extent possible without compromising public health and safety or an unbiased and thorough investigation." AIC Policy at 3.[2]

25.    The AIC Policy likewise forbids retaliation against respondents in academic integrity proceedings:

> While an inquiry or investigation is underway, the Academic Integrity Officer **will ensure that the respondent does not suffer retaliation from other members of WVU** in the terms and conditions of employment, academic standing, or other status at the University, **and will review instances of alleged retaliation** for appropriate action. *Id.*

26.    The AIC Policy specifically requires the University and BOG, through the Academic Integrity Officer, to repair the reputation of a respondent in an academic integrity proceeding if the investigation does not result in a finding of misconduct:

> **If no misconduct is found, the Academic Integrity Officer**, after consulting with the respondent and the Deciding Official, **will undertake diligent efforts to restore the respondent's reputation.** *Id.* at 4.

27.    The AIC Policy also provides specific procedures by which investigations into allegations of academic misconduct are performed.  In particular, the AIC Policy requires:

a.    The appointment of a "Screening Subcommittee" and "Discovery Subcommittee."

   *See id.* at 5.

b.    The entire Academic Integrity Process—from the initial meeting of the Screening Subcommittee to the final act of the Deciding Official—"should be completed within 210 days." *See id.* at 6.

---

[2]    Emphasis added unless otherwise noted.

**Student A**

28.     As reported publicly in the media, on or about October 11, 2007, a regional media outlet contacted WVU for the purpose of inquiring whether Student A had satisfied the requirements to earn an "eMBA" degree at the University.

29.     At the time of the media inquiry, Dr. Sears was Dean of the College of Business and Economics and as a tenured faculty member of the University.

30.     At the time of the media inquiry, Dr. Logar was Associate Dean of the College of Business and Economics and as a tenured faculty member of the University.

31.     Four days after the media outlet's inquiry, on October 15, 2007, then-University President Michael Garrison's Chief of Staff Craig Walker ("Walker") called a meeting to review the inquiry about Student A and whether she had satisfied the requirements to earn an eMBA degree at WVU.  Plaintiffs were required to attend, and did attend, the meeting.

32.     A number of other representatives of the WVU Administration and the College of Business and Economics attended the October 15 meeting, including Walker, Vice President of Legal Affairs and General Counsel Alex Macia ("Macia"), Provost and Professor of Biology Gerald Lang ("Lang"), then-Director of the Business and Economics eMBA program, Jerry Blakely ("Blakely"), the former director of the eMBA program during Student A's attendance at WVU, Paul Speaker ("Speaker"), and Vice President of Communications Bill Case.

33.     Based on the statements made by Speaker and Walker during the October 15, 2007 meeting, Macia stated at the meeting that it appeared Student A had earned her eMBA degree.

34.     Macia also advised the attendees at the meeting that potential adverse legal consequences could follow if the University did not award a degree to Student A.

35.     Based on Macia's advice, the attendees at the meeting determined that the University should advise Student A that she had earned her degree.

36.     Acting on Macia's advice, and at Lang's direction, Dr. Sears sent an October 23, 2007 response letter advising the inquiring media outlet that Student A had satisfied the requirements to earn her eMBA degree at WVU.

### The University's Investigation of Dr. Sears and Dr. Logar

37.     On May 30, 2008, then-President Garrison submitted a formal letter to Defendant McDiarmid requesting an investigation of the "potential academic misconduct committed by Stephen Sears . . . or any others who might have been involved."

38.     In December 2008, McDiarmid sent letters to both Dr. Logar and Dr. Sears informing them that they, as well as several other individuals, including Lang, were being charged with academic misconduct.

39.     The Hearing Panel contemplated by the procedures set forth in the AIC Policy was not even set to convene until April 27, 2009—more than 100 days beyond the 210-day limit set forth in the AIC Policy for *completion* of the AIC investigation. *See* AIC Policy at 6.

40.     And the Hearing Panel never convened, even on its delayed schedule. The University never presented a case of academic misconduct to a Hearing Panel. No finding of misconduct was made.

41.     During the course of the investigation, the University leaked several stories to the media publicizing unfavorable views of Dr. Sears and Dr. Logar from within the University. These leaks—not to mention the years-long duration of the University's investigation—caused serious harm to Plaintiffs' reputations.

42.     Despite the fact that the University never convened a Hearing Panel pursuant to the AIC Policy, the University maintained until recently that the Academic Integrity Proceedings against Dr. Sears and Dr. Logar were "ongoing."

### The Special Academic Integrity Officer's Proceedings
### Conclude With No Finding of Misconduct

43.     More than three years after the 210-day deadline imposed by the AIC for completing the investigation had passed, *see* AIC Policy at 6, the University charged Defendant Nigel Clark with reviewing the Academic Integrity Process regarding Student A in November 2011.

44.     Another 265 days passed from Clark's appointment to the time he completed his review.

45.     After conducting his review, Clark found in August 2012 that there were "unreasonable delay[s]" in the investigations of Dr. Sears and Dr. Logar, raising "due process implications" and "impugn[ing] the concept of fairness." He reached this conclusion more than 1500 days after Garrison's first allegation of misconduct.

46.     Clark further stated that no further academic misconduct action would be taken with respect to the Student A matter.

47.     Defendants terminated the Academic Integrity proceedings against Dr. Sears and Dr. Logar, agreeing to take no further steps.

48.     Defendants made no finding of academic misconduct on the part of Dr. Sears or Dr. Logar.

**Defendants' Subsequent Refusals to Comply with the AIC Policy**

49.     Because there was no finding of academic misconduct, by the terms of the AIC Policy, Defendants are now obligated to consult with Dr. Sears and Dr. Logar in order to restore their reputations.

50.     Dr. Sears and Dr. Logar requested in writing that Defendants take steps in order to restore their reputations as required by the AIC Policy.

51.     Despite the fact that the investigation resulted in no finding of misconduct, Defendants have refused—and continue to refuse—to restore the harm done to Plaintiffs' reputations as a result of the University's conduct as required by the AIC Policy.

52.     The entire matter regarding Student A and Plaintiffs' involvement in the matter has been highly publicized by local, regional, and national media since October 2007.  Since that time, thousands of articles, stories, and other references to this matter have been published, many of which identify Plaintiffs by name.  These include national media outlets like the Associated Press, USA Today, the New York Times, and msnbc.com.

53.     Due to the highly-publicized proceedings and the absence of due process, Plaintiffs have been deprived of property and liberty interests in their employment at WVU.

54.     Though Dr. Logar remains a tenured professor at WVU, he is no longer Associate Dean of the Business School, and he has lost the benefits and salary commensurate with that position.

55.     Dr. Logar has suffered damage to his reputation that has rendered him an outcast in the WVU community.  Because of the damage to his reputation, Dr. Logar has lost prospective research and consulting opportunities.

56.     Dr. Sears lost his position as Dean of the College of Business and Economics.  Dr. Sears also was denied a merit raise by Defendant Martin, in direct violation of the AIC Policy. This fact, like so many others in this investigation, was supposed to remain confidential under the AIC policy, but was instead publicized in the media.

57.     The damage to Dr. Sears's reputation resulting from the University's overdrawn investigation, media leaks, and refusal to vindicate his conduct was so great that he no longer works at WVU.  He too has forfeited opportunities for career development and alternative employment, and has lost the salary and privileges that accompanied his position as Dean of the Business School at WVU.

58.     Dr. Sears has been prevented from finding employment with several universities specifically because of the allegations made against him at WVU.

59.     For example, Dr. Sears was a finalist for the position of Dean at Marquette University when the story about Student A broke, and he was urged to withdraw from consideration.

60.     Other schools also expressed their interest in Dr. Sears, but were unable to consider him because of the media surrounding the WVU incident.

61.     Dr. Sears and Dr. Logar continue to suffer harm and to face challenges to their professional reputations, including limitations on their ability to seek alternative employment.

62.     Media attention surrounding the Student A incident, the University's investigation, and the negative consequences to the lives and careers of those involved, persists—even 5 years after the fact. *See, e.g.*, Mark Brazaitis, *A Polite, Passionate Protest*, DOMINION POST, Mar. 31, 2013, http://www.dominionpost.com/hpimages/scandal_essay.html (accessed April 24, 2013).

63.     Defendants have offered no defense of Dr. Sears or Dr. Logar, despite the ongoing publicity surrounding the Student A incident and the University's investigation.

64.     Indeed, Defendants have refused to take any steps to restore Dr. Sears and Dr. Logar's reputations, despite their contractual obligation to do so under the AIC Policy.

65.     Defendants' refusal to restore Dr. Sears and Dr. Logar's reputation is in retaliation for Plaintiffs challenging their treatment through the flawed AIC investigation process.

66.     Defendants' refusal to take steps to restore Dr. Sears and Dr. Logar's reputations is a breach of their employment contracts and violates their due process rights as guaranteed in the United States and West Virginia Constitutions.

## COUNT ONE—Breach of Contract

67.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

68.     Defendants failed to follow the AIC Policy, one of the contracts governing Plaintiffs' employment at the University, by failing to comply with the AIC Policy's requirements concerning confidentiality, timing, and repair of reputation.

69.     Defendants failed to follow the requirements of the AIC Policy by failing to prevent retaliatory action from being taken against Plaintiffs, including, but not limited to, loss of position and title, denial of increased pay, and restriction of academic activities.

70.     Defendants also failed to follow the requirements of the AIC Policy by failing to keep Plaintiffs' AIC investigations confidential and instead providing documents and commentary concerning the investigations to local and national media outlets.

71.     Defendants similarly failed to follow the requirements of the AIC Policy by refusing to repair the damage done to Plaintiffs' reputation during the AIC investigation after the University concluded its investigations with a finding of no misconduct.

72.     As a direct and proximate result of Defendants' breach of the AIC Policy, one of the contracts governing Plaintiffs' employment at the University, Plaintiffs have suffered damages including, but not limited to, loss of position and title, denial of increased pay, and diminished ability to pursue positions in consulting and academic fields.

### COUNT TWO – Denial of Procedural Due Process (42 U.S.C. § 1983)

73.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

74.     Plaintiffs had a due process right and interest in the Defendants adhering to the AIC Policy.

75.     By failing to repair the reputational damage done to Plaintiffs, Defendants knowingly and willfully violated Plaintiffs' due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article III, Section II of the West Virginia Constitution.

76.     Further, in failing to repair the reputation damage to Plaintiffs, Defendants violated and continue to violate their own AIC Policy related to academic misconduct proceedings by failing to ensure that the process is carried out faithfully.

77.     As Defendant Clark admits, Defendants have ignored the timing requirements contained in the AIC Policy by failing to complete the Academic Integrity Proceedings within the prescribed time and allowing them to drag on unreasonably.

78.     Plaintiffs had a protected property interest in their expectation that Defendants would comply with the AIC Policy's requirement that Defendants repair their reputations.

79.     As a direct and proximate result of Defendants' actions, as described above, Plaintiffs have been deprived of liberty and property interests without due process, including:  1) damage to their professional reputations; 2) loss of consulting and other professional

opportunities that would have produced significant future income; 3) loss of salary and benefits; and (4) inability to seek alternative employment.

80.     Plaintiffs have no other adequate remedy at law and must seek redress for the violation of their constitutional rights in this Court.

### COUNT THREE – Denial of Substantive Due Process (42 U.S.C. § 1983)

81.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

82.     Plaintiffs had a due process right and interest in the Defendants adhering to the AIC Policy.

83.     By their blatant refusal to comply with the AIC Policy requirement to repair Plaintiffs' reputations, Defendants arbitrarily and capriciously violated Plaintiffs' substantive due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

84.     Because of Defendants' conduct, Plaintiffs were deprived of their constitutionally-protected rights to fundamental fairness in the proceedings brought against them by Defendants, and have been damaged as a result.

WHEREFORE, Plaintiffs respectfully request that the Court:

a.     Enter judgment in their favor and against Defendants on Counts I-III of the Amended Complaint;

a.     Enter any appropriate declaratory or equitable relief required to prevent the continued violation of Plaintiffs' constitutional rights, including, but not limited to, ordering Defendants to comply with the AIC Policy and restore Plaintiffs' reputations;

b.     Award all provable compensatory damages to Plaintiffs, as are appropriate;

c.     Award Plaintiffs the reasonable costs and fees associated with bringing this action to enforce their federally-protected rights to due process; and

d.     Make any other award that the Court deems just and proper.

Dated:  May 14, 2013                    Respectfully submitted,


                                        /s/ Robert J. Ridge
                                        Robert J. Ridge
                                        W. Va. Bar No. 7674
                                        THORP REED & ARMSTRONG, LLP
                                        301 Grant Street
                                        One Oxford Centre, 14th Floor
                                        Pittsburgh, PA  15219
                                        (412) 394-7711 (phone)
                                        (412) 394-2500 (facsimile)

                                        1233 Main Street, Suite 4000
                                        Wheeling, WV  26003-2839
                                        (412) 394-7711

                                        *Counsel for Cyril M. Logar*

                                        /s/ John H. Tinney. Jr.
                                        John H. Tinney, Jr. (WV Bar No. 6970)
                                        The Tinney Law Firm, PLLC
                                        707 Virginia Street, East
                                        P. O. Box 3752
                                        Charleston, WV 25337-3752
                                        (304) 720-3310 (voice)
                                        (304) 720-3315 (facsimile)


                                        /s/ Thomas A. Clare. P.C.
                                        Thomas A. Clare, P.C. (*pro hac vice* forthcoming)
                                        Kirkland & Ellis LLP
                                        655 Fifteenth Street, N.W.
                                        Washington, D.C. 20005
                                        (202) 879-5000 (phone)
                                        (202) 879-5200 (facsimile)

                                        *Counsel for R. Stephen Sears*