**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg**

**CYRIL M. LOGAR** and **R. STEPHEN SEARS**,

Plaintiffs,

v.

**WEST VIRGINIA UNIVERSITY BOARD OF
GOVERNORS**, including members from 2010
through the present, a West Virginia State Board;
**NIGEL CLARK**, individually and as Special
Academic Integrity Officer of West Virginia
University; **MARJORIE A. McDIARMID**,
individually and as the Steptoe and Johnson
Professor of Law and Technology and
Academic Integrity Officer for West Virginia University;
**E. JANE MARTIN**, Ph.D., individually and as former
Provost of West Virginia University;
**JAMES P. CLEMENTS**, individually and as current
President of West Virginia University; and
**MICHELE G. WHEATLY**, current Provost of
West Virginia University,

Defendants.

**Civil Action No. 1:13-CV-145
Judge Bailey**

<u>**MEMORANDUM OPINION AND ORDER
GRANTING MOTIONS TO DISMISS**</u>

Pending before this Court are the Motion to Dismiss filed by defendant Marjorie

McDiarmid [Doc. 18], the Motion to Dismiss on Behalf of West Virginia University Board of

Governors, E. Jane Martin, James P. Clements, and Michele G. Wheatly [Doc. 22], and the

Motion to Dismiss on Behalf of Defendant Nigel Clark [Doc. 30].  Briefing on all three

Motions has been completed, and the Motions are ripe for decision.  For the reasons stated

below, this Court will grant all three Motions.

## I. Procedural History

On December 3, 2010, the plaintiffs in the present case, Cyril M. Logar and R. Stephen Sears, filed a complaint in this Court against many of the same defendants in the present case pursuant to 42 U.S.C. § 1983 [1:10-CV-201-FPS, Doc. 1]["*Logar I*"].  In the prior case, the plaintiffs stated that the defendants deprived them of their liberty and property rights without due process, knowingly and intentionally sabotaged their reputations, deprived them of certain benefits and privileges commensurate with their positions as administrators and tenured faculty members at West Virginia University ("WVU"), and failed to adhere to WVU's established procedures for conducting academic misconduct investigations.

Thereafter, Marjorie A. McDiarmid filed a motion to dismiss, James P. Clements, C. Peter McGrath, and West Virginia University Board of Governors ("WVU BOG") filed a motion to dismiss, Mary Roberta Brandt and Beverly D. Kerr filed a motion to dismiss, and E. Jane Martin filed a motion to dismiss.  On July 28, 2010, this Court entered an order notifying the parties of its intent of possible conversion of the motions to dismiss into motions for summary judgment as to the issue of the statute of limitations and directed the parties to submit affidavits to this Court in which the parties should provide this Court with certain dates relevant to the statute of limitations applicable to the plaintiffs' claims.  The parties complied with this request.

On September 15, 2011, this Court converted the defendants' motions to dismiss into motions for summary judgment and granted each of the motions on the grounds that

2

the plaintiffs' claims were time-barred by the two-year statute of limitations applicable to civil rights actions based upon the two-year statute of limitations in tort actions in West Virginia. **Logar v. West Virginia Univ. Bd. Of Govs.**, 2011 WL 4345973 (N.D. W.Va. September 15, 2011. [1:10-CV-201-FPS, Doc. 150]. The same day, this Court entered judgment in this matter, dismissing the case with prejudice. [Id., Doc. 151].

Following dismissal, the plaintiffs filed a joint motion separately requesting that this Court alter or amend its judgment for the defendants pursuant to Federal Rule of Civil Procedure 59(e), and that it grant leave to the plaintiffs to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). In the motion, the plaintiffs argue that they should be given leave to amend their complaint to add contract-based and 42 U.S.C. § 1982 claims which they believe do not implicate the statute of limitations issues addressed in this Court's memorandum opinion and order dismissing the case. They further request that this Court reconsider its prior determination regarding the application of the statute of limitations to time-bar the claims in their original complaint, claiming that this Court's original opinion constituted plain error.

The defendants filed a joint memorandum in response in which it is argued that the plaintiffs' motion for leave to amend should be denied on the bases of undue delay and prejudice to the defendants. Additionally, the defendants argue that the plaintiffs' motion to alter or amend judgment should be denied because no new information has been introduced by the plaintiffs which justifies a request for reconsideration of this Court's original opinion, and that the plaintiffs are attempting to use this motion to raise arguments which could have been raised before the judgment in this case, which, they argue, is inappropriate. The plaintiffs timely replied to this response.

3

On January 25, 2012, this Court issued its Memorandum Opinion and Order Denying Plaintiffs' Motion to Alter or Amend Judgment and for Leave to File an Amended Complaint. *Logar v. West Virginia Univ. Bd. Of Govs.*, 2012 WL 243692 (N.D. W.Va. January 25, 2012).  [Id., Doc. 163].

The plaintiffs took an appeal to the United States Court of Appeals for the Fourth Circuit, which affirmed both decisions.  *Logar v. West Virginia Univ. Bd. Of Govs.*, 493 Fed.Appx. 460 (4th Cir. September 7, 2012) [Id., Doc. 169].

On May 14, 2013, the plaintiffs filed the present action, asserting that an August 1, 2012, determination terminating the misconduct investigation triggered a duty to remediate any damage to the plaintiffs' reputations.  The pending Motions to Dismiss were then filed.

## II.  <u>Facts</u>[1]

In October 2007, a local media outlet contacted West Virginia University ("WVU") inquiring about whether a particular student ("Student A") completed and earned an "eMBA" degree at WVU.  The plaintiffs, then Dean and Associate Dean of the College of Business and Economics at WVU, conducted an investigation at the request of then Provost, Gerald Lang, and concluded that Student A had not completed the degree.  On October 15, 2007, the plaintiffs attended a meeting allegedly called by defendant and then WVU President Michael Garrison.  Then WVU General Counsel Alex Macia, Lang, and then director of the MBA program Paul Speaker were also allegedly at the meeting.  The plaintiffs aver that General Counsel Macia advised them that Student A had earned the degree.  Plaintiff

---

[1] The facts, through January, 2012, are plagiarized from Judge Frederick P. Stamp, Jr.'s Memorandum Opinion and Order Denying Plaintiffs' Motion to Alter or Amend Judgment and for Leave to File an Amended Complaint.

Sears states that he was told to send a letter to the inquiring media outlet, stating that Student A had earned her degree.

The media outlet then made three Freedom of Information Act ("FOIA") requests. In April 2008, a special investigative panel from the media outlet issued a report regarding their findings.  On May 30, 2008, Garrison submitted a letter to defendant McDiarmid, Academic Integrity Officer for WVU, in which he requested an investigation of the potential academic misconduct committed by plaintiff Sears and/or any other person.  Garrison then submitted his resignation as president of WVU on June 6, 2008, effective August 31, 2008. The Office of General Counsel sent a memorandum to the plaintiffs on June 16, 2008, informing them that the Academic Integrity Committee had requested the cooperation of the General Counsel's office in the Student A investigation.  The memorandum instructed the plaintiffs to make available any and all documents relevant to the investigation.  The plaintiffs contended that this constituted specific legal advice and direction to the plaintiffs.

Defendant McDiarmid named several individuals to serve on the screening subcommittee, including defendant Kerr, then deputy general counsel at WVU.  The screening subcommittee issued a report on July 17, 2008.  McDiarmid mailed the plaintiffs this report via university mail on July 21, 2008.  On August 1, 2008, counsel for Sears sent McDiarmid a letter seeking an extension of time to respond to the screening subcommittee report.  On August 5, 2008, Logar sent McDiarmid a letter responding to the screening subcommittee report.  The plaintiffs state that Macia and other persons acting in the General Counsel's office submitted documents for review by the screening subcommittee, which included Kerr, who was also employed in the General Counsel's office at the same time.  The screening subcommittee report stated that no testimony or documentary

5

evidence indicated that Macia or Garrison knew of or were involved with the generation of the records sent to admissions and records.  The plaintiffs state that no reference was made by the screening subcommittee to the alleged fact that Macia had given legal advice and actively participated in the October 15, 2007 meeting, or that he had participated in communications regarding the Student A matter before and after the meeting.

Defendant McDiarmid then named a discovery subcommittee hearing panel.  In December 2008, defendant McDiarmid sent letters to the plaintiffs informing them that they were being charged with academic misconduct.  The plaintiffs allege that Kerr attended the hearings of the discovery subcommittee and served as its legal counsel.  The discovery subcommittee brought charges of academic misconduct against the plaintiffs on December 3, 2008.  The subcommittee's report contained the affirmative statements that records were fabricated, grades falsified, and that the plaintiffs had failed to comply with institutional requirements related to teaching and learning.

On February 24, 2009, Lang, who was also charged with misconduct by the screening subcommittee, filed a petition for writ of prohibition with the Circuit Court of Monongalia County, which sought to terminate disciplinary proceedings due to conflict of interest.  The plaintiffs in this action moved to intervene in these proceedings on April 20, 2009, and the petition was heard by the Susan B. Tucker, Monongalia County Circuit Court Judge, on April 22, 2009.  Judge Tucker granted Mr. Lang a writ of prohibition, but denied the plaintiffs' motions to intervene, deeming those motions untimely because they were filed two days before the hearing when the original petition had been pending for two months beforehand.  However, Judge Tucker acknowledged that the plaintiffs were subject to the same misconduct proceedings, and that she was of the opinion that their rights were

6

similarly infringed by, among other things, the WVU Office of General Counsel's conflict of interest, which caused her to grant Mr. Lang's writ. Judge Tucker terminated the academic integrity proceedings entirely.

Following Judge Tucker's order terminating the proceedings, the respondents in that case appealed, and Judge Tucker reaffirmed her opinion on January 24, 2011. However, on July 15, 2011, her previous orders were vacated following a settlement agreement between Lang and the respondents in that case. At no time during the pendency, appeal, or ultimate dismissal of the Lang petition, were either of the plaintiffs in this action made parties to the proceedings.

On December 3, 2010, the plaintiffs filed the prior civil action under 42 U.S.C. § 1983. Count I of the complaint alleged denial of procedural due process by the investigation and bringing of charges of academic misconduct while a conflict of interest existed with WVU's Office of General Counsel. The plaintiffs also alleged that in conducting the investigation and bringing charges, the defendants violated and continue to violate their own Policy and Procedures related to academic misconduct proceedings by failing to ensure that the process was free of conflicts of interest and was conducted in a fair and impartial manner. Count II of the complaint alleged denial of substantive due process by the investigating and bringing charges of academic misconduct while a conflict of interest existed with the General Counsel's office. In addition, the plaintiffs contended that the defendants deprived them of their rights to fundamental fairness in the proceedings.

On August 1, 2012, and while the appeal of the prior case was pending, defendant Nigel Clark, who was appointed as Special Academic Integrity Officer on November 10,

2011, terminated the Academic Integrity proceedings against both plaintiffs.  Dr. Clark concluded:

> Approximately five (5) years have elapsed since the award of the degree. Unreasonable delay raises due process implications and impugns the concept of fairness.  Therefore, as Special Academic Integrity Officer, it is my determination and decision that no further academic misconduct action should be taken with regard to the substance of the 2008 complaints related to the eMBA degree.  This decision is based solely on the inability to reach conclusion in a timely matter, and should not be construed as a determination on the merits of the underlying allegations.

*See* Dr. Clark's August 1, 2012 Letter [Doc. 23-2].

The plaintiffs contend that the above letter triggered a duty on the defendants to "consult with Dr. Sears and Dr. Logar in order to restore their reputations." [Doc. 1, p. 10].

The University's Policy and Procedures for Responding to Allegations of Academic Misconduct at West Virginia University ("the AIC Policy") [Doc. 1-1], provides, in part:

> If no misconduct is found, the Academic Integrity Officer, after consulting with the respondent and the Deciding Official, will undertake diligent efforts to restore the respondent's reputation.  Depending on particular circumstances, the Officer may notify those individuals aware of or involved in the case of the final outcome, publicize the final outcome in forums in which the allegation was previously publicized, or expunge all references to the misconduct from the respondent's personnel file.

[Doc. 1-1, p. 10].  Further, the AIC Policy provides:

8

> If no misconduct is found, the Academic Integrity Officer, after consulting with
> the respondent and the Deciding Official, will undertake diligent efforts to
> restore the respondent's reputation as described previously.

[Id., p. 15].

> If academic misconduct is not found, the respondent has the right to receive
> the University's assistance in restoring his or her reputation.

[Id., p. 32].

The Complaint in this case [Doc. 1], asserts three causes of action: (1) Count One alleges a breach of contract; (2) Count Two alleges the denial of procedural due process; and (3) Count Three alleges a denial of substantive due process.

### III.  Applicable Standard

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations in the Complaint to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243-44 (4th Cir. 1999).  A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.'  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)."  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits attached thereto, matters of public record, and other similar materials that are subject to judicial notice.  *Anheuser-Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995).

9

### IV. Discussion

1.  *Res Judicata*

The defendants contend that this action is barred by the doctrine of *res judicata*, due to the dismissal of all claims in **Logar I**.  This Court does not agree.  The plaintiffs have made it clear that they are asserting a claim based upon the fact that after the academic integrity investigation was terminated, the defendants did not comply with the duty set forth in the AIC Policy that required the University officials to undertake diligent efforts to restore the plaintiffs' reputations.  The plaintiffs maintain that such a duty did not arise until the investigation was terminated with no finding of misconduct on August 1, 2012.

"*[R]es Judicata* does not bar claims that did not exist at the time of the prior litigation." **Union Carbide Corp. v. Richards**, __ F.3d __, 2013 WL 3358994, *5 (4th Cir. July 5, 2013), quoting **Meekins v. United Transp. Union**, 946 F.2d 1054, 1057 (4th Cir. 1991).  Inasmuch as the present claim did not exist until August 1, 2012, this claim is not barred by *res judicata*.  Any claim which existed prior to January 25, 2012, is barred.

2.  Substantive Due Process

This Court will address the three claims in plaintiffs' Complaint in reverse order.  In Count Three the plaintiffs contend that the defendants acted arbitrarily and capriciously and deprived the plaintiffs of "their constitutionally-protected rights to fundamental fairness."

In **Martin v. Town of Brattleboro**, 2008 WL 4416283 (D. Vt. September 24, 2008), then Chief Judge Sessions described the requirements for a valid substantive due process claim:

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal

motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez* [*v. Levy*], 401 F.3d [75], 93 [(2nd Cir. 2005)] (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8 (1998)).   Thus, "[m]ere irrationality is not enough" to establish a claim**.** *O'Connor v. Pierson,* 426 F.3d 187, 203 (2d Cir. 2005).   "Where 'the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental,' notions of substantive due process will not apply." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington,* 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Reno v. Flores,* 507 U.S. 292, 303 (1993).

It is undisputed that Martin enjoyed a state-created property interest in continued employment, and that he could not be deprived of that interest without procedural due process.    *See* *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541-42 (1985).   Martin's state-law contract right, however, "bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution" under the rubric of substantive due process.   *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229-30 (1985) (Powell, J., concurring)).   Courts have acknowledged a "reluctan[ce] to expand the concept of substantive due process," invoking "judicial self-restraint ... to exercise the utmost care" in analyzing whether a complaint fairly alleges a deprivation of substantive due

11

process. *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992).

Illustrating this reluctance, most Circuit Courts of Appeal have declined to find that a right to continued public employment is a fundamental property interest entitled to substantive due process protection.  *See Am. Fed'n of Gov't Employees v. United States,* 330 F.3d 513, 523 (D.C. Cir. 2003) ("Neither the Supreme Court nor [the D.C. Circuit] has ever recognized an interest in public employment as fundamental.");  *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 142 (3d Cir. 2000) (tenured public employment is not entitled to substantive due process protection); *McKinney v. Pate,* 20 F.3d 1550, 1553, 1560 (11th Cir. 1994) (en banc) (state-created property interest in employment does not give rise to substantive due process claim); *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1350 (6th Cir. 1992) (same); *Kauth v. Hartford Ins. Co. of Ill.,* 852 F.2d 951, 958 (7th Cir. 1988) (same); *see also Shrum v. City of Coweta, Okla.,* 449 F.3d 1132, 1145 (10th Cir. 2006) (Tenth Circuit has yet to decide which property interests in employment are protected by substantive due process); *Dias v. Elique,* 436 F.3d 1125, 1131 n. 3 (9th Cir. 2006) (Ninth Circuit has yet to decide whether to recognize substantive due process action for arbitrary and unreasonable termination of government employment); *Huang v. Bd. of Governors of Univ. of N.C.,* 902 F.2d 1134, 1142 n. 10 (4th Cir. 1990) (doubtful that state law contract right to position in particular department is subject to substantive due process protection); *but see N.D. State Univ. v. United States,* 255

F.3d 599, 605 (8th Cir. 2001) (tenured professor at state institution had substantive due process to be free from arbitrary and capricious discharge); *Newman v. Massachusetts*, 884 F.2d 19, 24 (1st Cir. 1989) (First Circuit recognizes substantive due process right to be free from arbitrary and capricious actions affecting right to continued public employment); *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1987) (police captain had substantive due process right in continued employment).

This Circuit has expressed the opinion that "simple state-law contractual rights, without more, ... are not the type of 'important interests that have heretofore been accorded the protection of substantive due process.'" *Local 342*, 31 F.3d at 1196 (quoting *Ewing*, 474 U.S. at 230 (Powell, J., concurring)).  There is nothing in Martin's complaint or his submissions to the Court to suggest that his state-created right to continued employment as Brattleboro's Chief of Police is the type of fundamental Constitutional interest that could invoke the protection of substantive due process.

2008 WL 4416283 at *1-*3.

In *Booth v. Maryland*, 337 Fed.Appx. 301, 312 (4th Cir. 2009), the Fourth Circuit noted "that a circuit-split remains concerning whether a party's substantive due process rights are violated by an arbitrary, capricious, and pretextual discharge."  In *Booth*, the Court did not find it necessary to address the split.

However, in *Huang v. Bd. of Governors of Univ. of N.C.,* 902 F.2d 1134 (4th Cir.

13

1990), the Fourth Circuit considered a case in which the plaintiff was transferred from one department to another.  In a footnote, the Court stated that "[i]t is doubtful that Dr. Huang's position in BAE is a right properly subject to substantive due process review.  Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution.  Dr. Huang's entitlement to a position in BAE, if it exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution.  *See Ewing,* 474 U.S. at 229-30 (Powell, J., concurring).

In *Guthrie v. McClaskey*, 2012 WL 5494457, *6 (W.D. Va. November 13, 2012), Judge Urbanski, after quoting from *Huang*, stated:

> In considering a substantive due process claim, courts must look as a threshold matter to whether the property interest being deprived is "fundamental" under the Constitution.  "If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used.  If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process."  *Nicholas v. Penn. State Univ.,* 227 F.3d 133, 142 (3d Cir. 2000).  The majority of courts of appeals to have addressed this issue have held that tenured public employment is not a fundamental property interest entitled to substantive due process protection. *Id.*
>
> In a footnote to the above quotatio, Judge Urbanski listed the following cases:

14

*See also **Singleton v. Cecil,*** 176 F.3d 419, 425-26 (8th Cir. 1999) (en banc) ("a public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process"); ***McKinney v. Pate,*** 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc) ("employment rights are not 'fundamental' rights created by the Constitution"); ***Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington,*** 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); ***Sutton v. Cleveland Bd. of Educ.,*** 958 F.2d 1339, 1350 (6th Cir. 1992) ("plaintiff's state-created right to tenured employment lacks substantive due process protection"); ***Huang,*** 902 F.2d at 1142 n. 10 (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); ***Lum v. Jensen,*** 876 F.2d 1385, 1389 (9th Cir. 1989) (finding "no clearly established constitutional right to substantive due process protection of continued public employment"); ***Kauth v. Hartford Ins. Co. of Ill.,*** 852 F.2d 951, 958 (7th Cir. 1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest ... the plaintiff has not stated a substantive due process claim ."). *But see **Newman v. Massachusetts,*** 884 F.2d 19, 25 (1st Cir. 1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive

due process violation").

2012 WL 5494457, *6 n. 9.

The Eleventh Circuit, in **Silva v. Bieluch**, 351 F.3d 1045, 1047 (11th Cir. 2003), quoted and reaffirmed its holding in **McKinney v. Pate**, 20 F.3d 1550, 1560 (11th Cir. 1994), that "[b]ecause employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." *Accord,* **Palka v. Shelton**, 623 F.3d 447, 453 (7th Cir. 2010) (substantive due process claims are limited to violations of fundamental rights, and employment rights are not fundamental).

In **Singleton v. Cecil**, 176 F.3d 419 (8th Cir. 1999), the Eighth Circuit, sitting en banc, refused to apply substantive due process to an employee's termination, stating:

> To hold otherwise would be to disregard Supreme Court precedent and the
> decisions of our sister circuits, which hold that an employee's occupational
> liberty is not protected by substantive due process when the employee is
> discharged by a governmental employer.  We would also be abusing § 1983
> to intrude upon and second-guess at-will employment decisions made by
> state actors, notwithstanding the Supreme Court's admonishment that "[t]he
> federal court is not the appropriate forum in which to review the multitude of
> personnel decisions that are made daily by public agencies" and "[t]he United
> States Constitution cannot feasibly be construed to require federal judicial
> review for every such error."  **Bishop** [**v. Wood**],  426 U.S. [341], 349-50
> (footnote omitted).  Furthermore, we would be distorting the Constitution to

16

supplant Missouri state law and create a federal tort regulating state employment decisions.   *Cf.* ***Collins*** [***v. City of Harker Heights***], 503 U.S. [115], 128 (explaining that "state law, rather than the Federal Constitution, generally governs the substance of the employment relationship" and the "Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society" (quotations omitted)).

. . .

The only question here is whether Officer Singleton has been deprived of a "liberty" protected by substantive due process.   The substantive component of "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" ***Washington v. Glucksberg****,* 521 U.S. 702 (1997) (citations omitted).   Justice Powell articulated that "substantive due process rights are created only by the Constitution," unlike procedural due process rights which can be created by either state law or the Constitution. ***Ewing****,* 474 U.S. at 229 (Powell, J., concurring).   For this reason, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." ***Albright v. Oliver****,* 510 U.S. 266, 272 (1994).

17

176 F.3d at 424-25 (footnotes omitted)..

In **McKinney v. Pate**, 20 F.3d 1550, 1556 (11th Cir. 1994), the Eleventh Circuit stated that "[t]he substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty,' **Palko v. Connecticut**, 302 U.S. 319, 325 (1937).  The Supreme Court has deemed that most - but not all - of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights (for instance, the penumbral right of privacy, *see* **Planned Parenthood v. Casey**, 505 U.S. 833, [851] (1992)) also merit protection.  It is in this framework that fundamental rights are incorporated against the states.  A finding that a right merits substantive due process protection means that the right is protected 'against "certain government actions regardless of the fairness of the procedures used to implement them."' **Collins v. City of Harker Heights**, 503 U.S. 115, [125] (1992) (quoting **Daniels v. Williams**, 474 U.S. 327, 331 (1986))."  (footnotes omitted).

In **Sutton v. Cleveland Bd. of Educ.**, 958 F.2d 1339, 1350-51 (6th Cir. 1992), the Sixth Circuit rejected a substantive due process claim arising from the termination of a public employee, stating:

> We conclude that no such right exists.  Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process.  The substantive Due Process Clause is not concerned with the garden variety issues of common law contract.  Its concerns are far narrower, but at the same time, far more important.  Substantive due process "affords only those protections 'so rooted in the

traditions and conscience of our people as to be ranked as fundamental.'"
It protects those interests, some yet to be enumerated, "implicit in the
concept of ordered liberty," like personal choice in matters of marriage and
the family.

> State-created rights such as [plaintiff's] contractual right to promotion
do not rise to the level of "fundamental" interest protected by substantive due
process.   Routine state-created contractual rights are not ... so vital that
"neither liberty nor justice would exist if [they] were sacrificed."

958 F.2d at 1350-51, quoting *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir. 1990)
(citations omitted).

It is important to identify the right which the plaintiffs allege was violated.   In this
case, the right is the right to have the appropriate University officials take steps to
remediate any damage to the plaintiffs' reputations.   This would appear to be a "right"
provided by the AIC Policy.   It certainly is not a fundamental right, such as relating to
marriage, family, procreation, and the right to bodily integrity.

Accordingly, this Court finds that the plaintiffs have failed to allege, nor can they
allege, a violation of substantive due process.   Count Three will be dismissed.

3.    Procedural Due Process

Count Two of the Complaint alleges that the plaintiffs were denied procedural due
process when the University officials failed to take steps to remediate their reputations as
required by the AIC Policy.   The plaintiffs allege: (1) that they "had a due process right and
interest in the defendants adhering to the AIC Policy; (2) that by failing to repair the
reputational damage, the defendants violated plaintiffs' due process rights; (3) in failing to

repair the reputational damage, the defendants violated their own AIC Policy; and (4) that the defendants ignored the timing requirements in the AIC Policy.

"In order to prevail, [a plaintiff] must show '(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" **Shirvinski v. U.S. Coast Guard**, 673 F.3d 308, 314 (4th Cir. 2012), quoting **Kendall v. Balcerzak,** 650 F.3d 515, 528 (4th Cir. 2011).

First, this Court finds that the claim for delay in the proceedings is barred by **Logar I**. *See* [1:10-CV-201-FPS, Doc. 152-2] (the proposed amended complaint).

To the extent that this Count alleges unremedied defamation, this Court is guided by **Shirvinski**, in which the Fourth Circuit noted:

> Since **Paul v. Davis,** 424 U.S. 693 (1976), the Court has repeatedly admonished judges to be wary of turning the Due Process Clause into "a font of tort law" by permitting plaintiffs to constitutionalize state tort claims through artful pleading. *See, e.g., **Daniels v. Williams**,* 474 U.S. 327, 332 (1986). For that reason, the Supreme Court has required plaintiffs in cases involving allegedly defamatory statements by the government to show more than reputational injury in order to prevail on a constitutional claim. "[I]njury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]." **Siegert v. Gilley,** 500 U.S. 226, 233 (1991). Instead, a plaintiff must demonstrate that his reputational injury was accompanied by a state action that "distinctly altered or extinguished" his legal status if he

wants to succeed.  *See Paul,* 424 U.S. at 711.

In the context of public employment, this change in status occurs when the government acting as an employer discharges one of its employees.  *See id.* at 705 (noting that an "effect on the legal status of ... a person" includes the "loss of government employment"). As appellant points out, we have recognized that a loss of government employment accompanied by a public employer's stigmatizing remarks constitutes a deprivation of a liberty interest.  *See **Ridpath v. Bd. of Governors Marshall Univ.,*** 447 F.3d 292, 309 (4th Cir. 2006).

673 F.3d at 314-15.

"To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." ***Sciolino v. City of Newport News, Va.***, 480 F.3d 642, 646 (4th Cir. 2007), citing ***Stone v. Univ. of Md. Med. Sys. Corp.,*** 855 F.2d 167, 172 n. 5 (4th Cir. 1988).

In his dissenting opinion in ***Sciolino***, Judge Wilkinson stated that "the Constitution cannot possibly remedy every wrong experienced in life or for that matter every wrong experienced at the hand of some public entity.  So the question must be where constitutional law properly leaves off and where statutory and common law remedies kick in.  The question must be asked: the Fourteenth Amendment cannot be read to displace state remedial mechanisms by rendering the Constitution 'a font of tort law to be

superimposed upon whatever systems may already be administered by the States.' ***Paul v. Davis***, 424 U.S. 693, 701 (1976)."  480 F.3d at 656.

In ***Ridpath v. Bd. of Governors Marshall Univ.,*** 447 F.3d 292, 309 (4th Cir. 2006), the Fourth Circuit noted:

> ***Stone*** and the decisions relied on therein followed the Supreme Court's decision in ***Paul v. Davis,*** 424 U.S. 693 (1976), explaining its earlier decision in ***Roth***.  The plaintiff in ***Paul*** had asserted a § 1983 claim based on allegations that the defendant-police chief had included the plaintiff's name and photograph on a flyer of "Active Shoplifters" distributed for posting by local merchants, thus branding him as a criminal and seriously impairing his future employment opportunities.  *See* 424 U.S. at 697.  In rejecting this claim as one for defamation alone, the Supreme Court characterized its previous decision in ***Roth*** as recognizing "that governmental action defaming an individual *in the course of declining to rehire him* could entitle the person to notice and an opportunity to be heard as to the defamation."  ***Paul,*** 424 U.S. at 709-10 (citing ***Roth,*** 408 U.S. at 573) (emphasis added). The ***Paul*** Court deemed the language of ***Roth*** to be "inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment.**"** ***Paul,*** 424 U.S. at 709. Accordingly, under what is sometimes referred to as its "stigma plus" test, the ***Paul*** Court instructed that no deprivation of a liberty interest occurs when, in the course of defaming a person, a public official

22

solely impairs that person's *future* employment opportunities, without subjecting him to a *present* injury such as termination of government employment. ***Id.****; accord **Siegert v. Gilley**,* 500 U.S. 226, 233 (1991) ("Defamation, *by itself,* is a tort actionable under the laws of most States, but not a constitutional deprivation." (emphasis added)); *see also **Johnson v. Morris**,* 903 F.2d 996, 999 (4th Cir. 1990) ("Publication of stigmatizing charges alone, without damages to 'tangible interests such as employment,' does not invoke the due process clause." (quoting ***Paul****,* 424 U.S. at 701)).

447 F.3d at 309.

A "stigma-plus" claim requires [the plaintiff] to show: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." ***Sadallah v. City of Utica***, 383 F.3d 34, 38 (2d Cir. 2004) (citations omitted). The Fourth Circuit has held that "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious character defects such as dishonesty or immorality.'" ***Ridpath v. Bd. of Governors Marshall Univ.***, 447 F.3d 292, 308 (4th Cir. 2006) (citing ***Robertson v. Rogers***, 679 F.2d 1090, 1092 (4th Cir. 1982)). The Fourth Circuit has also, however, "distinguished statements that imply such serious character defects from statements that simply allege 'incompetence,'" the former being actionable under a "stigma-plus" theory,

23

the latter not. *Id.*   As examples of the former, the Fourth Circuit has

referenced charges of bribery, *see Boston v. Webb,* 783 F.2d 1163, 1165-

66 (4th Cir. 1986), official dishonesty, *see Cox v. N. Va. Transp. Comm'n,*

551 F.2d 555, 557-58 (4th Cir. 1973), and fraud, *see McNeill v. Butz,* 480

F.2d 314, 319-20 (4th Cir. 1973).

*Panowicz v. Hancock*, 2012 WL 4049358, *4 (D. Md. September 12, 2012)(Chasanow,

J.), quoting *Grimes v. Miller*, 448 F.Supp.2d 664, 673-74 (D. Md. 2006).

Applying the above authorities to the facts alleged in the Complaint leads this Court

to determine that there is no stigma-plus claim available to the plaintiffs.  First, the plaintiffs

have failed to identify any specific defaming statements, let alone identify any such

statements which were disseminated in the time frame in which they would not be barred

by *res judicata*.  Second, the plaintiffs have not alleged that any of the statements were

false, as required by *Sciolino*, *Ridpath*, and *Stone*.  Third, there is no alleged adverse

employment action which occurred in the post-*res judicata* time frame.  Finally, and

perhaps most important, the failure to remediate reputational damage does not appear to

be a sufficient liberty interest to support a claim for the violation of due process.

The plaintiffs also allege a due process violation in the alleged failure of the

University officials to comply with the remediation provisions of the AIC Policy.  Boiled down

to its essence, the plaintiffs' claim is that the University officials breached their obligation

under the AIC Policy to remediate any reputational damage.

"When the minimal due process requirements of notice and hearing have been met,

a claim that an agency's policies or regulations have not been adhered to does not sustain

24

an action for redress of procedural due process violations." ***Goodrich v. Newport News School Bd.***, 743 F.2d 225, 227 (4th Cir. 1984), citing ***Atencio v. Bd. of Educ. of Penasco Independent School District***, 658 F.2d 774 (10th Cir. 1981); ***Bates v. Sponberg***, 547 F.2d 325 (6th Cir. 1976). "The enforcement of state regulations . . . is to be done through the state court system and not in an action under 42 U.S.C. §§ 1981 and 1983, where no constitutional guarantees have been violated." ***Id***.

"[T]he failure of the School District to afford Moore a conference prior to not renewing her contract amounts to no more than a violation of the District's own policies and does not implicate the protections of the due process clause." ***Moore v. Bonner***, 1985 WL 188299, *3 (4th Cir. March 25, 1985), citing ***Goodrich***.

In ***Parker v. Albemarle Cty. Pub. Schools***, 2009 WL 29501, *4 (W.D. Va. January 5, 2009), Judge Moon held that "a violation of grievance procedures does not necessarily constitute a violation of due process under the Constitution. As the Fourth Circuit has made clear, so long as 'minimal [Fourteenth Amendment] due process requirements of notice and hearing have been met,' a claim that 'an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.' ***Goodrich v. Newport News School Bd.***, 743 F.2d 225, 227 (4th Cir. 1984). In other words, 'the fourteenth amendment does not require a local school board to adhere to its own guidelines as long as minimum due process is accorded.'" ***Id***.

In ***Echtenkamp v. Loudon Cty. Pub. Schools***, 263 F.Supp.2d 1043 (E.D. Va.), Judge Ellis, after quoting the passages immediately above from ***Goodrich***, added "[i]n short, ***Goodrich*** stands for the sensible proposition that 'the enforcement of state

regulations ... is to be done through the state system and not in an action under 42 U.S.C. §§ 1981 and 1983, where no federal constitutional guarantees have been violated.' *Id*."

In a footnote, Judge Ellis stated "*See also **McDarby v. Dinkins**,* 907 F.2d 1334 (2nd Cir. 1990) (citing **Goodrich** and holding that '[a] breach of procedural requirements does not create a due process violation unless an individual was "denied a fair forum for protecting his state rights."'); ***Atencio v. Board of Education**,* 658 F.2d 774, 780 (10th Cir. 1981) (holding that '§ 1983 is not a vehicle for federal court correction of errors, committed by school administrators in exercise of their discretion, not rising to the level of violation of specific constitutional guarantees'); *Cf. **Holland v. Rimmer**,* 25 F.3d 1251, 1257 (4th Cir. 1994) (holding that defendants' failure to provide plaintiff notice 'on Form 129-01-004, as specified in the personnel manual, can hardly support a finding that he was deprived of procedural due process')." 263 F.Supp.2d at 1055 n 6.

In ***Trotter v. Regents of the Univ. of New Mexico***, 219 F.3d 1179, 1185 (10th Cir. 2000), the Tenth Circuit noted that "even assuming that the Medical School failed to follow its own regulations, we find that this failure would not, by itself, give rise to a constitutional claim under the Fourteenth Amendment. *See* [***Bd. of Curators of the Univ. of Mo. v.***] ***Horowitz**,* 435 U.S. 78, 92 n. 8 [1978] (suggesting that a university's failure to follow its own academic rules does not, in itself, give rise to a due process violation); ***Schuler** [**v. Univ. of Minn.**],* 788 F.2d 510, 515 [8th Cir. 1986] (holding that a University's noncompliance with its own grievance appeal procedures did not violate a student's right to procedural due process); *cf. **Hill v. Trustees of Indiana Univ.**,* 537 F.2d 248, 252 (7th Cir. 1976) (holding that a professor's failure to comply with University's Student Code of Conduct in failing a

26

student as a penalty for plagiarism did not, in itself, constitute a violation of the Fourteenth Amendment)."

In this case, with the issues of proper notice and hearing barred by *res judicata*, the alleged failure of the University to comply with the AIC Policy does not rise to the level of a due process violation.  Count Two, the procedural due process claim, will be dismissed.

4.      Breach of Contract

Count One of the Complaint alleges that the University officials' alleged failure to follow the process set forth in the AIC Policy constitutes a breach of contract. Unfortunately, this Court lacks jurisdiction to hear this claim.  There is no federal question. There is no diversity, nor could there be.  *See* **West Virginia Univ. Bd. of Governors v. Rodriguez**, 543 F.Supp.2d 526 (N.D. W.Va. 2008).

To the extent that this Court would be able to exercise supplemental jurisdiction over the claim, this Court declines to do so.  *See* **Sigmon v. Poe**, 564 F.2d 1093, 1096 (4th Cir. 1977); 28 U.S.C. § 1367(c)(2).

### V.Conclusion

For the reasons stated above, the Motion to Dismiss filed by defendant Marjorie McDiarmid **[Doc. 18]**, the Motion to Dismiss on Behalf of West Virginia University Board of Governors, E. Jane Martin, James P. Clements, and Michele G. Wheatly **[Doc. 22]**, and the Motion to Dismiss on Behalf of Defendant Nigel Clark **[Doc. 30]** are hereby **GRANTED**. Accordingly, Counts Two and Three of the Complaint are **DISMISSED WITH PREJUDICE**. Count One of the Complaint is **DISMISSED WITHOUT PREJUDICE**.  As such, this matter is **ORDERED STRICKEN** from the docket of this Court.  The Clerk is hereby **DIRECTED**

to enter judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Opinion to all counsel of record herein.

**DATED**: August 21, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE